IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THE ESTATE OF RACHEL M. HAMMERS, DECEASED, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 15-7994 ) ) |
| DOUGLAS COUNTY, KANSAS BOARD OF COMMISSIONERS, et al., | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM AND ORDER

Plaintiffs bring this action against defendants Douglas County, Kansas Board of Commissioners; Kenneth M. McGovern; Kenneth L. Massey; and Steve Hornberger ("Douglas County Defendants"). The lawsuit arises from the death of Rachel Hammers while she was incarcerated at the Douglas County Correctional Facility ("DCCF"). Plaintiffs claim that Hammers's death was the result of policies the Douglas County Defendants promulgated, implemented, or otherwise set in motion that recklessly disregarded excessive risks to the health and safety of all prisoners confined to the DCCF, including Hammers. This matter is before the court on the Douglas County Defendants' Motion to Dismiss (Doc. 10).

**I.   Background Facts**

On the evening of Friday, May 11, 2012, at 5:57 p.m., Hammers was booked into DCCF. As alleged, Officer Troy Miller conducted an initial health screen, at which time Hammers reported daily alcohol use, hypertension, and depression. (Doc. 1-1 at 16–17, ¶ 77.) Officer Miller did not refer Hammers to medical personnel for further evaluation, nor did he designate a medical disposition. (*Id.*) Rather, Officer Miller scored Hammers's overall health risk at "zero." (*Id.* at 17, ¶ 77.) Hammers was not referred to medical personnel or screened for any risk of alcohol withdrawal. Less than eighteen

hours later, Hammers was found in her cell, bloodied and unresponsive—she had no pulse and was not breathing. (*Id.* at 18, ¶ 83.) Hammers was transferred to Lawrence Memorial Hospital, where she was pronounced dead. (*Id.* at 18, ¶ 86.)

Plaintiffs allege that, at the time of her death, Hammers suffered from severe alcohol dependency. The autopsy report stated that Hammers's death was attributed to seizure activity related to acute ethanol withdrawal and chronic ethanolism. (*Id.* at 18–19, ¶ 87.) The autopsy report also stated that Hammers had "a history of alcoholism, high blood pressure, and depression," and that, at the time of her death, her medications included Ambien, Atenolol, and Celexa, and Librium. (*Id.*) Plaintiffs allege that Hammers's medical history, conditions, and active prescriptions were well documented in her DCCF medical records during her previous incarcerations in March and April of 2012, (*id.* at 14–16, ¶¶ 66–77), and that the Douglas County Defendants unreasonably delayed and denied access to qualified medical personnel to evaluate and treat Hammers's preexisting medical conditions when she arrived on May 11, 2012.

Plaintiffs filed their first lawsuit in this court on April 21, 2014, Case No. 2:14-CV-02188-JTM KMH ("*Hammers I*").[1] Plaintiffs filed their First Amended Complaint on June 27, 2014. (*Hammers I*, Doc. 17.) Plaintiffs' First Amended Complaint alleged five (5) claims—three § 1983[2] claims under the Eighth Amendment and two state law claims for wrongful death, each of which was asserted collectively against all named defendants.

The Douglas County Defendants moved to dismiss *Hammers I*. On October 21, 2014, the court issued a Memorandum and Order, dismissing plaintiffs' claims without prejudice. (*Hammers I*, Doc.

---

[1] Pursuant to D. Kan. Rule 7.6, and in accordance with Tenth Circuit precedent, the court takes judicial notice of the public records filed in this court that have a direct bearing on the disposition of this case. *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.") (internal citations omitted).
[2] 42 U.S.C. § 1983.

-2-

37.) The court stated that Hammers was a pretrial detainee and that, as a result, "the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, is the source of her protections." (*Id.* at 7.) Accordingly, the court stated:

- "The court finds that plaintiffs have failed to plead a short, plain statement showing they are entitled to relief for the deprivation of Eighth Amendment rights under §1983 and dismisses those claims without prejudice." (*Id.* at 2.)

- "[T]he court does not exercise supplemental jurisdiction over the remaining state-law claims and dismisses them without prejudice." (*Id.*)

- "The court's dismissal of all federal claims from the complaint requires that it also dismiss Counts IV and V for lack of subject matter jurisdiction. The court therefore dismisses Counts IV and V without prejudice." (*Id.* at 10.)

- "IT IS ACCORDINGLY ORDERED this 21st day of October, 2014, that defendants' Motion to Dismiss (Dkt. 18) is GRANTED and plaintiffs' amended complaint (Dkt. 17) is DISMISSED without prejudice." (*Id.*)

On April 15, 2015, plaintiffs filed a Petition in the District Court of Douglas County, Kansas, asserting substantially similar claims as those in *Hammers I*. Defendants removed the Douglas County case on May 8, 2015, which is the case presently before this court ("*Hammers II*"). Plaintiffs allege three claims under §1983 and three state law claims.

**II.    Analysis**

Defendants argue that plaintiffs' claims are barred by the statute of limitations, res judicata, and collateral estoppel. Defendants also claim they are entitled to qualified immunity and that the claims against the individual Douglas County Defendants in their official capacities should be dismissed.

**A.  Statute of Limitations**

The parties do not dispute that plaintiffs' claims accrued on May 12, 2012; a two-year statute of limitations applies; and *Hammers II* was filed more than two years after the claims accrued. As such, *Hammers II* was filed after the statute of limitations passed. However, Kan. Stat. Ann. § 60-518 is a savings statute that gives plaintiffs an additional six months to bring a second action under certain conditions. *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 838 (1989). For plaintiffs to benefit from the savings statute, they must have 1) commenced the first action within due time; 2) failed in the first action otherwise than upon the merits, with the failure coming after the relevant statute expired; and 3) commenced the new action within six months of the failure. *Taylor v. Casey*, 182 F. Supp. 2d 1096, 1102 (D. Kan. 2002) (citing *Burnett v. Perry Mfg., Inc.*, 151 F.R.D. 398, 400 (D. Kan. 1993)). Defendants argue that the six-month savings statute does not apply because the claims in *Hammers I* were decided on the merits. The court disagrees.

In *Hammers I*, the court repeatedly stated that plaintiffs' claims were dismissed ***without prejudice***. The court dismissed without prejudice plaintiffs' claims under the Eighth Amendment for failure to state a claim, which was appropriate. *Alonzo-Villarreal v. Maye*, No. 13-3032-SAC, 2014 WL 234452, at *2 (D. Kan. Jan. 22, 2014) (dismissing action for failure to state a claim without prejudice). The court dismissed without prejudice plaintiffs' state law claims for lack of jurisdiction, which also was appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (stating that dismissals for lack of jurisdiction should be without prejudice because the court is incapable of reaching a disposition on the merits of the underlying claims) (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004)).

By expressly dismissing without prejudice plaintiffs' claims (Doc. 37 at 2, 10) and the amended complaint (*id.* at 10), the court in *Hammers I* did ***not*** decide plaintiffs' claims on the merits. As such, the Kansas savings statute gave plaintiffs six months from October 21, 2014—the date of dismissal—

to re-assert their claims against defendants. *McNeal v. Zobrist*, No. 04-2149-JAR, 2006 WL 2692811, at *4 (D. Kan. Sept. 18, 2006). Plaintiffs filed this action within that six-month period. Moreover, that plaintiffs' alleged claims in *Hammers II* do not exactly mirror the claims asserted in *Hammers I* is not dispositive, as the claims arise from the same set of facts. *See Cooper v. Old Dominion Freight Line*, No. 09-CV-2441-JAR/GLR, 2010 WL 2609385, at *10 (D. Kan. June 25, 2010) ("[T]his Court has found no Kansas authority holding that the mere addition of new claims will remove the second action from the protection of the savings statute."). Accordingly, the court determines that plaintiffs' claims are not barred by the statute of limitations.

      **B. Res Judicata/Collateral Estoppel**

Defendants argue that plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel. The doctrines of res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related. "Res judicata, or claim preclusion, precludes the parties or their privies from relitigating issues that were or *could have been* raised in the prior action." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503–04 (10th Cir. 2002) (emphasis in original) (internal citation omitted). Three elements must be present in order for res judicata to apply: 1) a final judgment on the merits in an earlier action; 2) identity of parties or privies in the two suits; and 3) identity of the cause of action in both suits. *Id.* at 504; *see also Gose v. City of Douglas, Wyoming*, 561 F. App'x 723, 724–25 (10th Cir. 2014).

Along the same lines, the doctrine of collateral estoppel bars relitigation of issues raised in successive proceedings if those issues were determined by a valid final judgment to which such determination was essential. *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990)). Collateral estoppel applies when: 1) the issue previously decided is identical with the one presented in the action in

-5-

question; 2) the prior action has been finally adjudicated on the merits; 3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and 4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Id.* (citing *United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992)).

As explained above, *Hammers I* was not decided on the merits. Accordingly, res judicata and collateral estoppel are inapplicable because there was no final judgment precluding re-litigation of plaintiffs' claims or the issues in the case.

### C. Qualified Immunity

Qualified immunity shields government officials from liability for discretionary functions if their conduct does not violate clearly established rights of which a reasonable government official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 432 F.3d 1163, 1165 (10th Cir. 2005). Although summary judgment provides the typical vehicle for asserting qualified immunity, defendants also may raise the defense in a motion to dismiss. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). Asserting the defense in this fashion, however, subjects defendants to a more challenging standard of review than would apply on summary judgment. *See id.* (citing *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992) (stating that Rule 12(b)(6) motion is viewed with disfavor and rarely granted)).

In evaluating qualified immunity in the context of a motion to dismiss, the court determines whether plaintiffs have alleged that defendants deprived them of a constitutional right and whether that right was clearly established at the time. *Peterson*, 371 F.3d at 1202 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiffs bear the burden to allege facts sufficient to allow the court to make these

determinations.  *See id.* at 1202–03; *see also Perez*, 432 F.3d at 1165.  If plaintiffs sufficiently allege the deprivation of a clearly established right, qualified immunity will not protect defendants.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  "Clearly this standard does not require a precise factual analogy to pre-existing law; however, the plaintiff must demonstrate that the unlawfulness of the conduct was apparent in light of pre-existing law."  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1184 (10th Cir. 2010) (quoting *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992)).

Plaintiffs have alleged that the Douglas County Defendants promulgated and enforced policies that were deliberately indifferent to the medical needs of DCCF inmates and that those established policies failed to provide adequate access to medical personnel for evaluation and treatment.  (Doc. 1-1 at 19–26, Count 1.)  Plaintiffs also allege that DCCF policies and procedures do not provide for an adequate health care delivery system or arrange for adequate contracts with other health care providers.  (*Id.* at 27–29, Count II; 29–31, Count III.)

The court finds that Hammers—whether a pretrial detainee or a prisoner—had a clearly established constitutional right to adequate medical care while in the Douglas County Defendants' custody.  *See Wilson v. City of Chanute*, 43 F. Supp. 2d 1202, 1213 (D. Kan. 1999) (quoting *Martin v. Bd. of Cnty. Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990)).  Accordingly, the court must determine whether the Douglas County Defendants were deliberately indifferent to Hammers's medical needs.  *Martin*, 909 F.2d at 406 ("Plaintiff has thus identified a clearly established constitutional standard by which her inadequate medical attention claim must be judged in the familiar "deliberate indifference to serious medical needs . . . .") (quoting *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985)); *Armstrong v. Shawnee Cnty. Jail*, No. 08-3185-SAC, 2008 WL 4001456, at *1 (D. Kan. Aug. 26,

2008) (stating that a prison official's deliberate indifference to a serious medical need violates a prisoner's or pretrial detainee's constitutional rights).

Deliberate indifference to a prisoner's serious medical needs contains both a subjective and an objective component. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). For the objective component, this court requires that the medical need be sufficiently serious, which is a category that has been defined to include a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotations omitted). Death, which occurred in this case, is sufficiently serious to meet the objective component. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

As for the subjective component, a plaintiff "must establish that defendant(s) knew he [or she] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Rauh v. Ward*, 112 F. App'x 692, 694 (10th Cir. 2004) (citing *Hunt*, 199 F.3d at 1224). Plaintiffs need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; rather, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Moreover, whether a prison official had the requisite knowledge of a substantial risk is a question of fact, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.*

In this case, plaintiffs allege the following: Pursuant to DCCF policies, medical conditions that prisoners report when they arrive at the DCCF are not evaluated by nursing personnel until "the next business day." If a prisoner arrives on a Friday, like Hammers, that prisoner's medical conditions are not evaluated until the following Monday. (*Hammers II*, Doc. 1-1 at 9, ¶¶ 30–31, 35–36.) There is a

high incidence of serious and life threatening medical conditions among the DCCF prisoner population that necessitate timely access to qualified medical personnel for evaluation and treatment, including Alcohol Withdrawal Syndrome ("AWS"). (*Id.* at 9–10, ¶ 39.) Defendants had actual or constructive knowledge of the high incidence of alcohol abuse/dependency and susceptibility to AWS among prisoners: The DCCF Year-End Annual Reports for the years 2009-2013 expressly state that "many times arrestees brought to the booking area are under the influence of alcohol and/or drugs[.]" (*Id.* at 10–11, ¶¶ 43–44.)

Douglas County contracts with Dennis E. Sale, D.O., L.L.C. ("Sale LLC") and Douglas County Visiting Nurses Association, Inc. ("VNA") to provide prisoners with "comprehensive health care services." (*Id.* at 11 and 12, ¶¶ 46 and 51.)[3] Defendant Sale LLC's contract requires a physician to be on site at the DCCF twice a week, for a total of six hours, to monitor charts and recommend treatment. (*Id.* at 12, ¶¶ 49 and 50.)

Defendant VNA's contract requires one registered nurse ("RN") to be on site eight hours a day, five days a week. All other shifts are staffed with either licensed practical nurses or medication aides—neither category of whom who are trained or authorized by law to conduct independent nursing assessments or evaluate and manage serious medical conditions. (*Id.* at 12–13, ¶ 54.) Defendant VNA's contract does not require any VNA personnel to be on site between the hours of 11:00 p.m. and 8:00 a.m. on Mondays through Fridays, nor does the contract require an RN to be on site during the evenings, overnights, or on weekends. (*Id.* at 13, ¶ 55.)

Based upon these alleged facts, plaintiffs claim that, despite the high risk of probable harm to inmates, the Douglas County Defendants promulgated, implemented, or otherwise set in motion policies that: 1) unreasonably delayed and denied access to qualified medical personnel for the evaluation and treatment of preexisting medical conditions when prisoners are booked into the DCCF

---

[3] Plaintiffs also bring claims against Dennis E. Sale, D.O., Sale LLC, and VNA in this lawsuit.

on nights and weekends; and 2) delegated the provision of medical care to unqualified personnel. (Doc. 17 at 26–27.)

Viewing the complaint in the light most favorable to plaintiffs, as this court must on a motion to dismiss, the court denies the request to dismiss the action on the basis of qualified immunity. As alleged, when prisoners arrive at the DCCF on weekends with serious medical conditions and active prescriptions, the Douglas County Defendants' policies delay evaluation and treatment until the following Monday and delegate the care of prisoners to personnel who may, or may not, be qualified. Given the alleged knowledge by the Douglas County Defendants that arrestees brought to the booking area are many times under the influence of alcohol or drugs, plaintiffs may be able to prove a set of facts establishing that the Douglas County Defendants acted or failed to act in promulgating policies and procedures related to the medical treatment of incoming prisoners, despite knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. Granting qualified immunity, if proper, is premature at this stage without the development of a factual record. Accordingly, the court denies the Douglas County Defendants' motion to dismiss on the basis of qualified immunity.

### D. Individual Capacities

Plaintiffs have sued defendants McGovern, Massey, and Hornberger in both their individual and official capacities. The Douglas County Defendants argue that plaintiffs' claims against these individuals in their official capacities should be dismissed. The court agrees.

The Supreme Court has held that a suit brought against an individual in his official capacity is really "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a

suit against the entity." *Id.* at 166.  When a plaintiff names both a county and a county officer in his official capacity as defendants in an action, the suit against the officer is redundant, confusing, and should be dismissed.  *Semsroth v. City of Wichita*, No. CIV.A. 06-2376-KHV, 2007 WL 2091167, at *4 (D. Kan. July 20, 2007).

Here, plaintiffs have sued Douglas County directly, so plaintiffs' official-capacity claims against McGovern, Massey, and Hornberger are redundant.  Accordingly, the court finds that the claims against the individual Douglas County Defendants in their official capacities should be dismissed.  *See Burns v. Bd. of Cnty. Comm'rs of the Cnty. of Jackson*, 197 F. Supp. 2d 1278, 1296–97 (D. Kan. 2002) (dismissing redundant official-capacity claims as matter of judicial economy); *Sims v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 120 F. Supp. 2d 938, 944 (D. Kan. 2000) (stating that duplicative official-capacity claims afford no additional relief and should be dismissed).

**IT IS THEREFORE ORDERED** that the Douglas County Defendants' Motion to Dismiss (Doc. 10) is granted in part and denied in part.  The claims against Kenneth M. McGovern, Kenneth L. Massey, and Steve Hornberger in their official capacities are dismissed.  The court denies the remainder of the motion.

Dated this 20th day of October, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**
