IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THE ESTATE OF RACHEL M. HAMMERS, DECEASED, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 15-7994 ) ) |
| DOUGLAS COUNTY, KANSAS BOARD OF COMMISSIONERS, et al., | ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM AND ORDER**

This case arises from plaintiffs' claims surrounding the death of Rachel Hammers while she was incarcerated at the Douglas County Correctional Facility ("DCCF"). In the complaint, plaintiffs claim Hammers died, specifically from Alcohol Withdrawal Syndrome, because defendants did not have proper medical procedures in place. This matter is currently before the court on defendants' motions to strike plaintiff's rebuttal expert disclosures (Docs. 137 & 143). Collectively, defendants have moved for an order striking plaintiff's rebuttal expert disclosures, arguing that the rebuttal experts are improper as they should have been identified in plaintiff's initial expert disclosures. For the reasons set forth, this court denies the motions.

**I.     Standard**

Rule 26 of the Federal Rules of Civil Procedure governs the duty to disclose discovery. More specifically, Rule 26(a)(2) sets out the procedures for expert testimony disclosure. Under Rule 26(a)(2)(D), a party must disclose any expert witness it may use at trial and must do so within the time frame ordered by the court or at least 90 days before the date set for trial. Expert evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" must be disclosed within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Rebuttal evidence is "evidence which attempts to 'disprove or contradict' the evidence to which it contrasted." *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (citing *Black's Law Dictionary* 579 (7th ed. 1999)).  The admission of rebuttal evidence on a topic is permissible once a party has opened the door to that topic. *Id.*  It is within the court's discretion whether to admit or exclude rebuttal evidence. *Id.*  The Federal Rules of Civil Procedure set out specific procedures for the disclosure of rebuttal witnesses and "courts will disallow the use of a rebuttal expert to introduce evidence more properly a part of a party's case-in-chief," especially if the alleged rebuttal expert is used to introduce new legal theories. *See Stephenson v. Wyeth LLC*, No. 04-2312-CM, 2011 WL 4900039 at *1 (D. Kan. October 14, 2011) (citing *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1515 (10th Cir. 1990); *103 Investors I, L.P. v. Square D Co.,* 372 F.3d 1213, 1218 (10th Cir. 2004)). Rebuttal evidence, however, is not necessarily precluded simply because it may have been offered in a party's case-in-chief.  *See Bell v. AT&T*, 946 F.2d 1507, 1512 (10th Cir. 1991) (stating, "where the evidence rebuts new evidence or theories proffered in the defendant's case-in-chief, that the evidence may have been offered in the plaintiff's case-in-chief does not preclude its admission in rebuttal"). The court is within its discretion to exclude rebuttal evidence if, for example, plaintiffs seek to rebut "defense theories which they knew about or reasonably could have anticipated." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000).

Defendants have asked this court to strike plaintiff's rebuttal expert disclosures because they are, in actuality, new case-in-chief experts designated out of time.  Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a party is precluded from using information or witnesses not timely disclosed unless the failure to disclose was "substantially  justified or is harmless."  The court considers four factors when determining whether an untimely disclosure is substantially justified or harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to

cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir.1999).

## II.     Discussion

Defendants ask the court to strike plaintiffs' rebuttal expert disclosures on the grounds that the rebuttal experts are actually case-in-chief experts who should have been identified in the plaintiffs' initial expert disclosures.  According to the scheduling order, plaintiffs' initial expert disclosures were due January 11, 2016, defendants' disclosures were due March 11, 2016, and any rebuttal expert disclosures by plaintiffs were due April 11, 2016 (Doc. 33).  Plaintiffs timely served on defendants their case-in-chief expert reports from Madeleine LaMarre and Dr. Joe Goldenson.  (Docs. 71, 73).  According to their reports, both individuals were experts in correctional health care and both concluded the decedent, Rachel Hammers, died as a result of defendants' failures to provide adequate medical care.  (Doc. 138-2 at 19; 138-3 at 21.)  Dr. Goldenson noted that these failures resulted in Hammers's "death from an alcohol withdrawal related seizure."  (Doc. 138-2 at 19.)  In his deposition, however, Dr. Goldenson testified his only opinion to Hammers's cause of death was from "what the coroner said."  (Doc. 143-1 at 3).  The coroner on the case, Dr. Erik Mitchell, submitted multiple documents after completing Hammers's autopsy.  In the "Autopsy Report," Dr. Mitchell concluded:

> While no specific anatomic finding or clinical assay can establish the diagnosis, in view of the combination of lack of diagnostic findings and the history of past seizure activity associated with acute ethanol withdrawal, the best explanation for cause of death is sudden death associated with seizure activity.  (Doc. 148-5 at 5.)

In the "Report of Death" and "Certificate of Death" the cause of death was listed as "sudden death due to seizure disorder probably related to acute ethanol withdrawal due to chronic ethanolism." (Doc. 148-5 at 2; 148-6 at 1.)

Defendants timely served on plaintiffs their initial expert disclosures. One of defendants' non-retained expert witnesses was the coroner, Dr. Mitchell. (Doc. 92 at 2). Dr. Mitchell submitted an affidavit claiming Hammers did not die of "an acute withdrawal from alcohol," rather her death was a result of seizure activity, and that there was no way her death could have been prevented. (Doc. 148-4 at 2–3). Defendants' other expert witnesses also concluded Hammers did not die of Alcohol Withdrawal Syndrome.

Plaintiffs timely served on defendants their rebuttal expert witness reports, which included two physicians with expertise in Alcohol Withdrawal Syndrome and forensic pathology. Both experts concluded Hammers died of Alcohol Withdrawal Syndrome.

In their motions to strike plaintiffs' rebuttal experts, defendants claim that the rebuttal experts should have been identified in plaintiffs' initial expert disclosures because the rebuttal experts' opinions as to Hammers's cause of death are germane to plaintiffs' case-in-chief. Defendants argue plaintiffs' case-in-chief experts failed to provide an opinion on causation, and that plaintiffs cannot now remedy that error using rebuttal testimony. Defendants also argue the rebuttal testimony is cumulative.

Plaintiffs argue they relied on the death certificate to initially establish Hammers's cause of death. Because the death certificate listed the cause of death as "sudden death due to seizure disorder probably related to acute ethanol withdrawal due to chronic ethanolism," plaintiffs claim they were justified in believing Hammers died of Alcohol Withdrawal Syndrome. The rebuttal experts' conclusions that Hammers did die of Alcohol Withdrawal Syndrome were permissible rebuttal testimony because the coroner submitted his affidavit in defendants' case-in-chief, refuting this listed cause of death.

While plaintiffs and defendants make multiple arguments regarding the admissibility of the rebuttal experts, this court finds the rebuttal expert opinion fits squarely within the definition of rebuttal testimony.  As mentioned above, the proper function of rebuttal evidence is "to contradict, impeach or defuse the impact of the evidence offered by an adverse party."  *Stephenson*, 2011 WL 4900039 at *1 (citing *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008).  Rebuttal evidence is improper when the evidence is germane to plaintiff's case-in-chief and is necessary to establish the burden of proof.  *See id.*  (noting, "[t]he plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief").

Defendants argue that plaintiffs bear the burden of establishing all elements of their claims in their case-in-chief, and introducing an opinion as to causation in rebuttal is improper.  Defendants also claim plaintiffs should have reasonably anticipated defendants would contest causation in their case-in-chief, and therefore, plaintiffs should have included the cause of death experts in their initial disclosures.

Plaintiffs, however, did include causation experts in their case-in-chief.  Experts LaMarre and Goldenson both concluded Hammers's death was caused by defendants' failures to provide adequate medical care while Hammers was incarcerated.  These opinions as to causation were not dependent solely on the cause of death.  Neither expert discussed in depth the details surrounding Hammers's cause of death.  Dr. Goldenson mentioned Alcohol Withdrawal Syndrome as the cause of death but later admitted he came to that conclusion based on "what the coroner said."  Dr. Goldenson was likely referring to the death certificate, which as stated above, listed the cause of death as sudden death due to seizure disorder *probably related to acute ethanol withdrawal* due to chronic ethanolism." (emphasis added.)  Plaintiffs argue they reasonably relied on the death certificate to establish cause of death as

allowed by the Kansas Uniform Vital Statistics Act.  *See* K.S.A. §65-2416 ("Certificates filed within six months after the time prescribed therefor shall be prima facie evidence of the facts therein stated."); *see also* K.S.A. §65-2401(a) ("As used in this act: '[v]ital statistics' includes the registration, preparation, transcription, collection, compilation, and preservation of data pertaining to . . . death.").

The coroner, Dr. Mitchell, now claims the parties misinterpreted his conclusions and that there was no evidence that Hammers died of Alcohol Withdrawal Syndrome.  Plaintiffs' designation of experts to rebut that opinion is permissible rebuttal evidence. While plaintiffs could have interviewed Dr. Mitchell and designated him as a non-retained witness in their case-in-chief, they weren't required to do so.  And plaintiffs weren't unreasonable for relying on what was listed in Hammers's death certificate—an official document filed with the State of Kansas.  Dr. Mitchell's affidavit and defendants' other experts who refuted the cause of death opened the door for rebuttal testimony to clarify a specific detail of the case—cause of death—not an entire element of plaintiffs' claims.

In conclusion, this court finds that plaintiffs' rebuttal experts were properly and timely designated in order to rebut defendants' experts' opinions that Hammers did not die of Alcohol Withdrawal Syndrome.

**IT IS THEREFORE ORDERED** that the Douglas County Defendants' Motion to Strike Rebuttal Expert Disclosures of Plaintiffs (Doc. 137) and Defendants Dennis E. Sale, D.O. and Dennis E. Sale, D.O., LLC's Motion to Strike Rebuttal Expert Disclosures of Plaintiffs (Doc. 143) are denied.

Dated this 16th day of November, 2016, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**